IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:17-CV-00224-FDW-DSC

| | |
|---|---|
| EILEEN HUNTER, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>STATE FARM FIRE AND CASUALTY )<br>COMPANY, )<br>)<br>Defendants. )<br>) | ORDER |

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 34), and Defendant's Motion for Summary Judgment. (Doc. No. 38). At oral argument on February 4, 2019, the Court orally granted Defendant's Motion for Summary Judgment as to Plaintiff's unfair and deceptive trade practices claim and deferred ruling on the remainder of Plaintiff's claims. For the reasons stated below, the remainder of Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Summary Judgment is DENIED.

**I. Background**

This case involves a dispute over whether damage to the east wall of Plaintiff's house was covered by Plaintiff's property insurance policy. The following facts are undisputed by the parties. Plaintiff's house was constructed in 1999, (Doc. No. 36-5, p. 6), and consists of two levels: a basement level and a main level. (Doc. No. 37, p. 1). Throughout the relevant time period, Plaintiff's home has been covered by a State Farm North Carolina homeowners insurance policy ("the Policy"). Id.

In 2009, Plaintiff made a claim for damage relating to water intrusion around windows on the east wall. Id. at 2. A State Farm inspection on May 19, 2009 noted evidence of long-term water

intrusion, but Defendant denied the claim because the home insurance policy excluded damage from, among other things, "constant and repeated seepage and leakage of water." Id. In 2013, Plaintiff noticed significant water intrusion into the basement level of the home during heavy rains. Id. Following this incident, State Farm investigated, found that the water had entered the home from an overburdened foundation drain line, and denied Plaintiff's claim because the policy excluded coverage for damage from faulty or inadequate design of the home's drainage system. Id. at 3. These previous denials of coverage are not at issue in this case.

At some point between 2013 and 2014, Plaintiff hired a window contractor who observed decay in the wooden framing structures of the windows on the east wall of the house. Id. Plaintiff replaced the windows, but water continued to intrude into the wall cavity to cause ongoing decay and damage. Id. In August 2014, Plaintiff's construction consultant, Perry Culpepper, inspected the east wall of the home. Id. Culpepper noted that the living room window header had sagged by one inch and the exterior basement door was difficult to open due to sagging above it. Id. Culpepper determined that the entire east wall needed to be replaced due to rot and degradation of the interior wall framing. Id. at 4.

On September 22, 2014, Plaintiff filed the claim at issue in this case, stating that the wall was in "imminent and immediate threat of collapsing" due to decay from water intrusion and seeking coverage under the Policy. Id. State Farm retained a structural engineer, Brian Cone, to inspect the home on October 2, 2014. Id. at 5. State Farm denied the claim in November 2014, relying on exclusions in the Policy relating to "collapse and exclusions for deterioration, settling, shrinking bulging or expansion of bulkheads and walls, wet or dry rot, faulty, inadequate or defective maintenance or materials." Id. Plaintiff requested a reconsideration of her claim on December 10, 2014, stating that Cone had recommended that she refrain from opening the

basement door for fear of the entire wall collapsing. Id. Defendant later reaffirmed its denial on Plaintiff's claim. Id.

Culpepper inspected the east wall of the home again in January 2015. Id. Culpepper noted that the living room window header had sagged an additional one-eighth of an inch from a previous visit. Id. Culpepper recommended significant structural repairs to the wall and advised that a delay in making repairs could lead to the wall's collapse. Id. Also in January 2015, Plaintiff heard a popping noise while staying in the house and discovered that a piece of molding above a main level window had popped off the wall. Id. at 5–6. Plaintiff subsequently provided Defendant with Culpepper's revised report and informed Defendant of the detached molding. Id. at 6. Defendant informed Plaintiff that its position on coverage had not changed. Id.

In November 23, 2015, Plaintiff contacted Defendant informing them that the condition of the home had worsened after a series of heavy rains in the area. Id. Plaintiff informed Defendant of her intention to repair the home and gave Defendant an opportunity to examine the wall components before repair. Id. Defendant's inspector, Brian Cone, inspected the wall again on December 3, 2015. Id. On this inspection, portions of drywall had been removed and the interior of the wall was visible. Id. Cone observed wood root and staining around the windows and stated that the damage was consistent with long-term water intrusion. Id. Cone recommended that Plaintiff retain a professional structural-design engineer to provide shoring recommendations until repairs were completed.[1] Id. at 7–8. Plaintiff's wall was repaired between March and November 2016. Id. at 7. In November 2016, Plaintiff once again requested reconsideration of her claim, but it was denied. Id. at 8.

---

[1] The parties dispute whether Cone told Plaintiff to not open the door for fear of "a catastrophic result." Id. at 7. It is undisputed that this information did not make it into Cone's written report. Id.

Plaintiff subsequently filed suit in this court. Plaintiff's lawsuit consists of four claims: 1) a declaratory judgment that Plaintiff's damages were covered under the Policy's provisions for "collapse," 2) an alternative declaratory judgment that the "collapse" provisions in the Policy are ambiguous, 3) a breach of contract claim for Defendant's failure to pay the covered claim, and 4) a claim for unfair and deceptive trade practices under North Carolina law. (See generally Doc. No. 1). Defendant moves for summary judgment on all of Plaintiff's claims. (Doc. No. 38). Plaintiff moves for summary judgment on the first three claims, but argues that there is a triable issue of fact as to the last claim. (Doc. No. 43, p. 2).

## II. Legal Standard

*A. Summary Judgment Standards*

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact in the case. Fed. R. Civ. P. 56(a). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the burden shifts and the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (quoting Fed.R.Civ.P. 56(e)).

Simply "rest[ing] upon the mere allegations or denials of [a plaintiff's] pleadings" is insufficient to survive a properly made and supported motion for summary judgment. Id. at 586 n.11. Instead, the non-moving party must adduce affirmative evidence, by means of affidavits or other verified evidence, showing that a genuine dispute of material fact exists. See id. at 586–87. "Although the court must draw all justifiable inferences in favor of the nonmoving party, the

nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013).

*B. Choice of Law*

A federal court sitting in diversity is bound to apply conflict of law provisions of the state in which the court sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). In North Carolina, insurance contracts are enforced and interpreted based on the "substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy." Fortune Ins. Co. v. Owens, 526 S.E.2d 463, 466 (N.C. 2000). Since this policy was purchased in North Carolina to insure real property located in the state, North Carolina law applies.

Under North Carolina law, the interpretation of language in an insurance policy is question of law for the courts. Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co., 172 S.E.2d 518, 522 (N.C. 1970). If the language of the policy is clear and unambiguous, the court must enforce the contract of insurance as it is written. Id. However, if the terms of the policy are ambiguous, the policy should be construed in favor of the policyholder, against the company. Id. A policy is ambiguous when, "in the opinion of the court, the language of the policy is fairly and reasonably susceptible to either of the constructions for which the parties contend." Id. The insured party ultimately bears the burden of showing that their claim falls within the language of the policy. Hobson Constr. Co., Inc. v. Great American Ins. Co., 322 S.E.2d 632, 635 (N.C. Ct. App. 1984).

### III. Analysis

In the present case, Parties agree that interpretation of the specific language in the "collapse additional coverage" provision in the Policy is an issue of first impression for North Carolina courts. The relevant section of the Policy reads:

8. Collapse

> a. With respect to this Additional Coverage:
>
>> (1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.
>>
>> (2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.
>>
>> (3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.
>>
>> (4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage, or expansion.
>
> b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:
> . . .
>> (2) Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse.

(Doc. No. 36-15, p. 31). Plaintiff argues that while the wall was still standing, the supporting wood struts within the wall had collapsed, and thus, Plaintiff's claim should be covered by the Policy as a "cave in" even though the entire wall had not collapsed to the ground. (See Doc. No. 35, p. 6). Defendant counters by arguing that the wall itself was still standing, and according to the plain language of the Policy, "a building or any part of a building that is standing is not considered to be in a state of collapse." (Doc. No. 39, p. 9–11).

The Court finds that the Policy unambiguously excludes Plaintiff's claim. Regardless of whether the term "collapse" is ambiguous, the Policy unambiguously states that a "falling down"

or "caving in" must be "abrupt." Merriam-Webster defines "abrupt" as "characterized by or involving action or change without preparation or warning; <u>sudden and unexpected</u>." <u>Abrupt</u>, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/abrupt (last visited February 19, 2019) (emphasis added); <u>see also</u> <u>Wachovia Bank</u>, 172 S.E.2d at 522 (stating that nontechnical words in a policy should be "given a meaning consistent with the sense in which they are used in ordinary speech, unless the context clearly requires otherwise").

Furthermore, it does not make sense to read the Policy as only applying the "abrupt" adjective to "falling down" but not to "caving in." In natural sentence construction, adjectives that precede lists are applied to all items within the list. For example, in the statement, "the vehicle was a red car or truck," the adjective "red" would naturally be used to describe either a car or a truck. <u>See</u> <u>In re Transbrasil S.A. Linhas Aereas</u>, 644 F. App'x 959, 962 (11th Cir. 2016) (per curiam) (stating that an adjective at the beginning of a series applies to all items within the list). Similarly, the Policy requires either a "falling down" or "caving in" to be "abrupt."

Here, it is undisputed that the damage and deterioration of the wall occurred over several years from consistent water intrusion. (<u>See</u> Doc. No. 37, p. 4). According to the Parties' jointly stipulated facts, the water intrusion problem was first noticed in 2009. <u>Id.</u> at 2. From 2009 to 2015, a variety of inspectors and contractors opined that the ongoing damage to Plaintiff's wall was due to long-term water damage. <u>See generally id.</u> Over the course of several years, Plaintiff's wall sunk, by most, a few inches. <u>See id.</u> at 5 (describing Culpepper finding a downward settlement of one-eighth of an inch compared to his observations from the previous year). Other than the sudden detachment of a cosmetic piece of molding, Plaintiff's wall was in a slow state of deterioration and there were no abrupt shifts to the wall's structure throughout the relevant time period. <u>See generally id.</u> Thus, the damage to the wall was not covered by the Policy as an "<u>abrupt</u> falling down or caving

in." (Doc. No. 36-15, p. 31) (emphasis added); see Hurlburt v. Mass. Homeland Ins. Co., 310 F. Supp. 3d 333, 341 (D. Conn. 2018) (holding that a slow deterioration did not constitute an abrupt collapse); see also Markland v. Homesite Ins. Co., 2018 WL 1734719 (Super. Ct. Conn. Mar. 6, 2018) ("It is undisputed that the deterioration taking place in the plaintiffs' basement walls is a gradual, progressive process that takes many years to result in a complete falling down of the building."). Since the Policy unambiguously did not cover Plaintiff's claim, summary judgment is appropriate on Plaintiff's claims for declaratory judgment and breach of contract.

## Conclusion

For the foregoing reasons and for the reasons stated in open court, the Court finds that summary judgment is appropriate as to all of Plaintiff's claims. Thus, Defendant's Motion for Summary Judgment, (Doc. No. 38), is GRANTED, and Plaintiff's Motion for Summary Judgment, (Doc. No. 34), is DENIED. The Clerk of Court is respectfully directed to CLOSE THE CASE.

IT IS SO ORDERED.

Signed: February 26, 2019

Frank D. Whitney
Chief United States District Judge